UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAMON WITHERBEE,

                Plaintiff,

                v.

DAN DOW, ET AL.,

                Defendants.

Case No. 2:22-cv-2027-MWF (MAR)

ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND

## I.

## __INTRODUCTION__

On July 10, 2022, Damon Lloyd Witherbee ("Plaintiff"), proceeding pro se, constructively filed[1] the instant First Amended Complaint ("FAC").  ECF Docket No. ("Dkt.") 11 at 1, 6.  For the reasons discussed below, the Court dismisses the FAC with leave to amend.

**If Plaintiff desires to pursue this action, he is ORDERED to respond by no later than September 5, 2022, by choosing one of the three (3) options discussed in Part V, below.**  Further, Plaintiff is admonished that, if he fails to timely respond, the Court will recommend that this action be dismissed without further leave to amend and with prejudice for failure to state a claim and follow the Court's orders.

---

[1] Under the "mailbox rule," when a pro se inmate gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted); Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to § 1983 suits filed by pro se prisoners").

## II.

## SUMMARY OF THE COMPLAINT

### A.    Factual allegations

Plaintiff, currently an inmate at Mule Creek State Prison, constructively filed a First Amended Complaint that when liberally construed appears to bring claims under 42 U.S.C. § 1983[2] for excessive force and inadequate medical care.  Id. at 3–4. Plaintiff brings claims against Dan Dow, a district attorney; the San Luis Obispo County Sherriff; Does 1–10, unidentified sheriffs at the San Luis Obispo County Jail; J. Tonani, a correctional officer at Norco State Prison ("NSP"); and Bell, a correctional officer at Mule Creek State Prison ("MCSP") (collectively "Defendants"). Id.

Plaintiff alleges the following: Dow put Plaintiff's life at risk by "not listening to [his] pleas about [his] health."  Id. at 3.  The San Luis Obispo County Sheriff forcibly clamped handcuffs on Plaintiff's left hand and forced Plaintiff down to the ground.  Id.  Unidentified sheriffs at the County Jail put Plaintiff in "dangerous areas," even though they were aware of Plaintiff's poor health.  Id.  Tonani denied Plaintiff's request to receive breathing treatments for his COPD.  Id. at 4.  Lastly, Plaintiff alleges that Bell denied Plaintiff medical attention when he was experiencing chest pain.  Id.

### B.    Relief sought

Plaintiff seeks damages to compensate him for pain and suffering, and lost wages.  Id. at 6.

///

---

[2] Plaintiff checked a box on the Civil Rights Complaint Form indicating the FAC is being filed pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Dkt. 11 at 1. However, all the listed Defendants appear to be either state or local government entities or officers.  Thus, Plaintiff's claims would arise under § 1983, not Bivens.  Accordingly, the Court construes the FAC as a § 1983 action.  See Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991) (noting that § 1983 and Bivens action are the same, except for replacement of state actor under § 1983 with federal actor under Bivens); see also Woods v. Carey, 525 F.3d 886, 889–90 (9th Cir. 2008) (holding that courts should liberally construe pro se documents).

## III.

## **STANDARD OF REVIEW**

Where a plaintiff is incarcerated, a court must screen the complaint under 28 U.S.C. § 1915A and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. § 1915A; see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). When considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892–93 (9th Cir. 2011). However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and internal quotation marks omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889–90 (9th Cir. 2008). However, liberal construction should only be afforded to "a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989), and a court need not

3

1  accept as true "unreasonable inferences or assume the truth of legal conclusions cast
2  in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir.
3  2003).

4        If a court finds the complaint should be dismissed for failure to state a claim, a
5  court has discretion to dismiss with or without leave to amend.  Lopez v. Smith,
6  203 F.3d 1122, 1126–30 (9th Cir. 2000).  Leave to amend should be granted if it
7  appears possible the defects in the complaint could be corrected, especially if the
8  plaintiff is pro se.  Id. at 1130–31; see also Cato v. United States, 70 F.3d 1103, 1106
9  (9th Cir. 1995).  However, if, after careful consideration, it is clear a complaint cannot
10  be cured by amendment, a court may dismiss without leave to amend.  Cato, 70 F.3d
11  at 1107–11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

12  **IV.**
13  **<u>DISCUSSION</u>**
14  **A.**  **THE FAC IMPROPERLY JOINS DISTINCT CLAIMS**
15      **1.**  **Applicable law**
16        Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims
17  to a lawsuit when they are against the same defendant.  Fed. R. Civ. P. 18(a).
18  Rule 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right
19  to relief arises out of the same "transaction, occurrence, or series of transactions" and
20  "any question of law or fact common to all defendants will arise in the action."  Fed.
21  R. Civ. P. 20(a)(2); see also League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency,
22  558 F.2d 914, 917 (9th Cir. 1977).  However, "[u]nrelated claims against different
23  defendants belong in different suits . . . to prevent the sort of morass that [a multi-
24  claim, multi-defendant suit] produce[s.]"  Billie v. Brown, No. CV 19-03078-VAP
25  (SK), 2019 WL 6792806, at *1 (C.D. Cal. Aug. 28, 2019) (citing George v. Smith,
26  507 F.3d 605, 607 (7th Cir. 2007)).  When several claims are misjoined, the court can
27  generally dismiss all but the first named defendant without prejudice to any new,
28  separate lawsuits against some or all of the present defendants based on the claim or

1   claims brought in the present complaint.  Coughlin v. Rogers, 130 F.3d 1348, 1350

2   (9th Cir. 1997); Kirakosian v. J&L Sunset Wholesale & Tobacco, No. CV 16-06097-

3   CAS (AJWx), 2017 WL 3038307, at *3 (C.D. Cal. July 18, 2017) ("An accepted

4   practice under Rule 21 is to dismiss all defendants except for the first defendant

5   named in the complaint.").

6           **2.      Analysis**

7           Here, the FAC contains an allegation of excessive force and potentially two

8   allegations of inadequate medical care.  See Dkt. 11 at 3–4.  Plaintiff's allegations all

9   appear to arise out of separate incidents, each occurring at separate facilities: the San

10  Luis Obispo County Jail, NSP, and MCSP.  Id.  Plaintiff's claims against each

11  defendant "relate to distinct events occurring at different locations and times,

12  involving different individuals." Kerstein v. Antelope Valley Hosp., No. CV 18-8960-

13  PA (JPRx), 2018 WL 10111361, at *2.  "Mere proximity in time and similarity in the

14  types of problems Plaintiff encountered are not enough to satisfy Rule 20(a)(2) and

15  bring in one suit otherwise unrelated claims against different defendants." Martin v.

16  Muniz, No. 17-01690 BLF (PR), 2018 WL 2902091, at *4 (N.D. Cal. June 5, 2018)

17  (citing Coughlin, 130 F.3d at 1350–51).

18          Accordingly, the Court finds that Defendants are improperly joined.  See Fed.

19  R. Civ. P. 20(a)(2); see also Coughlin, 130 F.3d at 1351 (finding misjoinder where

20  "[e]ach claim raises potentially different issues, and must be viewed in a separate and

21  individual light by the Court.").  Plaintiff's various unrelated claims against different

22  defendants must be brought in separate lawsuits.[3]

23  ///

24  ///

25  _____

26  [3] If, for example, Plaintiff choses to pursue his claims against Bell at MCSP in an amended
    complaint, any claims regarding his treatment while at NSP must be brought in a separate lawsuit.
27  In the event that Plaintiff files an amended complaint that once again improperly joins unrelated
    claims and defendants, the Court will be inclined to dismiss all but the first named defendant, Dan
28  Dow, without prejudice based on improper joinder.  See Kirakosian v. J&L Sunset Wholesale &
    Tobacco, No. CV 16-06097-CAS (AJWx), 2017 WL 3038307, at *3 (C.D. Cal. July 18, 2017).

**B.     THE FAC FAILS TO COMPLY WITH RULE 8**

    **1.     Applicable law**

    Rule 8 requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8.  Rule 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007).  "[T]he 'short and plain statement' [required by Rule 8] must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005).

    A court may dismiss a complaint because it is unintelligible or frivolous "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  Further, Rule 8 requires that a complaint clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss."  Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131–32 (9th Cir. 2008); Conley v. Gibson, 355 U.S. 41, 47 (1957).

    To comply with Rule 8, a plaintiff must link each defendant to specific instances of unlawful conduct.  See Est. of Bock ex rel. Bock v. Cnty. of Sutter, No. 2:11-CV-00536-MCE, 2012 WL 423704, at *6 (E.D. Cal. Feb. 8, 2012).  Where a plaintiff sues multiple defendants, "[s]pecific identification of the parties to the activities alleged by [a plaintiff] is required . . . to enable the defendant to plead intelligently."  Sherrell v. Bank of Am., N.A., No. CV F 11-1785-LJO (JLT), 2011 WL 6749765, at *4 (E.D. Cal. Dec. 22, 2011) (internal quotations omitted).  If the Complaint does not specify which conduct is attributable to which defendant, it is subject to dismissal.  See id. (dismissing complaint where it "lack[ed] cognizable facts of defendants' purported wrongdoing to provide fair notice as to what each defendant is to defend.").

///

2. **Analysis**

Here, the FAC does not contain a short, plain statement of Plaintiff's claims. As pleaded, it is difficult to determine from the FAC "who is being sued, for what relief, and on what theory[.]" McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996). Plaintiff makes several allegations concerning a number of different incidents involving many different defendants; however, it is not clear which facts give rise to which claim. Accordingly, the FAC fails to provide any purported Defendants "fair notice of what the plaintiff's claim[s] [are] and the grounds upon which [they rest]." Dura Pharms., Inc., 544 U.S. at 346 (internal quotation marks omitted).

Additionally, Plaintiff does not link any of the individual defendants' conduct to the alleged constitutional violations. See Estate of Bock ex rel. Bock, 2012 WL 423704, at *6. Ultimately, unclear pleadings, like the FAC, "leav[e] it to the Court to figure out what the full array of [Plaintiff's] claims is and upon what federal law, and upon what facts, each claim is based." Little v. Baca, No. CV 13-0373-PA (RZ), 2013 WL 436018, at *3 (C.D. Cal. Feb. 1, 2013). Thus, the Court cannot determine whether Plaintiff has alleged sufficient facts to state a particular claim, nor could any purported defendant effectively respond to Plaintiff's claims. Accordingly, the FAC is subject to dismissal for failure to comply with Rule 8. See McHenry, 84 F.3d at 1177.

If Plaintiff chooses to file a Second Amended Complaint, he must identify the legal and factual basis for each defendants' alleged liability. Plaintiff should be aware that in order to state a claim for a civil rights violation under § 1983, he must allege that each defendant, acting under the color of state law, deprived him of a right guaranteed under the United States Constitution or a federal statute. See West v. Atkins, 487 U.S. 42, 48 (1988). Suits against government officials under § 1983 in their individual capacities "seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985). "A person deprives another 'of a constitutional right, within the

meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis and alteration in original) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

For each claim, to properly state a claim against Defendants in their individual capacities, Plaintiff must explain:

    (1) the constitutional right that Plaintiff believes was violated;

    (2) the name of the Defendant(s) who violated the right;[4]

    (3) exactly what the Defendant(s) did or failed to do;

    (4) how the action or inaction of the Defendant(s) is connected to the violation of Plaintiff's constitutional right; and

    (5) what specific injury Plaintiff suffered because of the Defendant(s)' conduct.

See Tucker v. Stewart, 72 F. App'x 597, 598 (9th Cir. 2003) (denying plaintiff's claims for failing to satisfy Rule 8 where he failed to allege these elements as instructed by the district court).

## C.   TO THE EXTENT PLAINTIFF SEEKS MONETARY DAMAGES, THE CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES SHOULD BE DISMISSED

### 1.   Applicable law

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Graham, 473 U.S. at 166 (citations and internal quotation marks omitted); see also Cmty. House, Inc. v. City of Boise, Idaho, 623 F.3d 945,

---

[4] The court acknowledges that Plaintiff may not know the name of every involved individual. However, to the extent Plaintiff brings this action against specific officers or facility staff, Plaintiff must at least identify each individual as a separate John Doe defendant ("John Doe 1," "John Doe 2," etc.) and properly attribute specific acts of illegal conduct to each defendant. Under such circumstances, the Court may allow the Plaintiff to conduct limited discovery to learn the names of the individuals.

1   966–67 (9th Cir. 2010) (an official capacity suit is treated as a suit against the entity).

2   A plaintiff may seek monetary damages under § 1983 from state employees in their

3   individual capacity.  See Adler v. Lewis, 675 F.2d 1085, 1098 (9th Cir. 1982) ("State

4   officials must be sued in their individual capacity in an action for monetary

5   damages.").  However, because "a suit against a state official in his or her official

6   capacity . . . is no different from a suit against the State itself," state officials sued in

7   their official capacity, like the State itself, are generally entitled to immunity[5] in a

8   § 1983 action.  Flint v. Dennison, 488 F.3d 816, 824–25 (9th Cir. 2007) (citation

9   omitted).

10         To state a cognizable § 1983 claim against a municipality or local government

11   officer in his or her official capacity, a plaintiff must show the alleged constitutional

12   violation was committed "pursuant to a formal governmental policy or a longstanding

13   practice or custom which constitutes the standard operating procedure of the local

14   governmental entity."  Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992)

15   (citations and internal quotation marks omitted).  A plaintiff must show that the

16   policy, practice, or custom was:  "(1) the cause in fact and (2) the proximate cause of

17   the constitutional deprivation."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

18   Proof of random acts or isolated events is insufficient to establish a custom or

19   practice.  Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989).

20   Rather, a plaintiff must prove widespread, systematic constitutional violations which

21   have become the force of law.  Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,

22   520 U.S. 397, 404 (1997).

23         **2.     Analysis**

24         Here, Plaintiff sues Defendants in their official capacities and appears to seek

25   monetary damages.  Dkt. 11 at 3–4, 6.  Although it is not entirely clear, all Defendants

26

27   _____

[5] "The Eleventh Amendment prohibits federal courts from hearing suits brought against an
unconsenting state."  Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir.
1991) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)).  The Eleventh

28   Amendment also prohibits "suits naming state agencies and departments as defendants," regardless
of whether the plaintiff seeks damages or injunctive relief.  Id.

1   appear to be either state or local government officers or entities.  All state officer

2   defendants are immune to official capacity suits for damages.  See Flint, 488 F.3d

3   at 824–25.

4        With regard to any Defendants who are local government officers or entities,

5   Plaintiff's official capacity claims must also fail.  Plaintiff does not identify "any

6   custom or policy that could serve as the basis for an official capacity claim against the

7   defendants."  Smith v. G. Delacruz, No. EDCV 20-841-SVW (KS),

8   2020 WL 7060198, at *3 (C.D. Cal. April 22, 2020) (dismissing plaintiff's official

9   capacity claims because plaintiff failed to connect the alleged violations to a custom or

10   policy).  Accordingly, Plaintiff's official capacity claims must be dismissed.  Id.

11   **D.**    **THE FAC NAMES DEFENDANTS THAT ARE IMMUNE FROM**

12        **SUIT**

13       **1.**    **Applicable law**

14        To state a claim under § 1983, a plaintiff must allege a deprivation of a right

15   secured by the Constitution and laws of the United States "by a person acting under

16   color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).

17        However, prosecutors have absolute immunity to suits under § 1983 when the

18   prosecutor acts within the scope of his or her authority and in a quasi-judicial

19   capacity.  Ybarra v. Reno Thunderbird Mobile Home Vill., 723 F.2d 675, 678 (9th Cir.

20   1984) (citing Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976)).  Prosecutors are not

21   immune to suits for actions outside of this scope.  Bly-Magee v. California,

22   236 F.3d 1014, 1018 (9th Cir. 2001) (finding that prosecutors were not "immune for

23   any actions that [were] wholly unrelated to or outside of their official duties.").

24   Therefore, whether a prosecutor is entitled to absolute immunity turns on the nature

25   of their actions, not necessarily whether they have committed misconduct.  See, e.g.,

26   Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir. 2003) ("A prosecutor's decision not to

27   preserve or turn over exculpatory material before trial, during trial, or after conviction

28   is a violation of due process[.] . . . It is, nonetheless, an exercise of the prosecutorial

1  function and entitles the prosecutor to absolute immunity from a civil suit for

2  damages." (citing Imbler, 424 U.S. at 431–32 n.34)).

3      In addition, "[t]he doctrine of qualified immunity protects government officials

4  from liability for civil damages insofar as their conduct does not violate clearly

5  established statutory or constitutional rights of which a reasonable person would have

6  known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations and

7  citation omitted).  To determine whether qualified immunity applies a court considers:

8  (1) "whether there has been a violation of a constitutional right" and (2) "whether that

9  right was clearly established at the time of the officer's alleged misconduct." Lopez v.

10  City of Glendora, 811 F. App'x 1016, 1018 (9th Cir. 2020).

11      **2.    Analysis**

12      Here, Plaintiff names Defendants in both their official and individual capacities.

13  Dkt. 11 at 3–4.  As discussed above, all of Plaintiff's official capacity claims must fail.

14  Even if this Court were to construe Plaintiff's claims for monetary damages as

15  individual capacity claims only, several Defendants are immune from suit.

16      **a.    District attorney**

17      Here, Plaintiff sues District Attorney Dan Dow in both his official and

18  individual capacity.  Dkt. 11 at 3.  Plaintiff alleges that Dow did not listen to Plaintiff's

19  pleas about his health.  Id.  Although Plaintiff did not provide any further details, his

20  sparse allegations appear to concern acts within Dow's role as a prosecutor during

21  Plaintiff's criminal proceedings.  See id.  Thus, any claims against Dow are barred by

22  prosecutorial immunity and subject to dismissal.

23      **b.    San Luis Obispo County Sheriff and unidentified sheriffs**

24      Plaintiff sues the San Luis Obispo County Sheriff and unidentified sheriffs at

25  the San Luis Obispo County Jail.  Dkt. 11 at 3.  Plaintiff alleges that the Sheriff

26  forcibly clamped handcuffs on him, and when he told the Sheriff that he has a metal

27  bar in his hand, the Sheriff "forced [him] down." Id.  Additionally, Plaintiff alleges

28

that individual County sheriffs knew that Plaintiff was in poor health, but still "put [him] in dangerous areas." Id.

Absent more specific factual allegations, these sheriffs appear to be protected by qualified immunity. Compare Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., 616 F.3d 963 (9th Cir. 2010) (finding that plaintiff's conclusory allegations against officers were insufficient to state a claim for violation of plaintiff's Fourth Amendment rights, and therefore qualified immunity applied), with Milke v. Ryan, 711 F.3d 998, 1008 (9th Cir. 2013) (granting relief because plaintiff had presented "hundreds of pages of court records from cases where [the officer] had committed misconduct, either by lying under oath or by violating suspects' Miranda and other constitutional rights"). Thus, Plaintiff's claims against the sheriffs are subject to dismissal.

**E.   PLAINTIFF FAILS TO STATE AN INADEQUATE MEDICAL CARE CLAIM UNDER THE EIGHTH AMENDMENT**

### 1.   Applicable law

Prison officials or private physicians under contract to treat state inmates "violate the Eighth Amendment if they are deliberately indifferent to a prisoner's serious medical needs." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citation, internal quotation marks, and alterations omitted); Farmer v. Brennan, 511 U.S. 825, 828 (1994); West v. Atkins, 487 U.S. 42, 54 (1988). To assert a deliberate indifference claim, a prisoner plaintiff must show the defendant: (1) deprived him of an objectively serious medical need, and (2) acted with a subjectively culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 297 (1991). "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta, 744 F.3d at 1081 (citations and internal quotation marks omitted).

"A prison official is deliberately indifferent to [a serious medical] need if he knows of and disregards an excessive risk to inmate health." Peralta, 744 F.3d at 1082

1   (citation and internal quotation marks omitted).  This "requires more than ordinary

2   lack of due care."  Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citations

3   and internal quotation marks omitted).  The "official must both be aware of facts

4   from which the inference could be drawn that a substantial risk of serious harm exists,

5   and he must also draw the inference."  Id. (citation and internal quotation marks

6   omitted).

7        "Deliberate indifference may appear when prison officials deny, delay, or

8   intentionally interfere with medical treatment, or it may be shown by the way in which

9   prison physicians provide medical care."  Id. (citation and internal quotation marks

10   omitted).  In either case, however, the indifference to the inmate's medical needs must

11   be purposeful and substantial; negligence, inadvertence, or differences in medical

12   judgment or opinion do not rise to the level of a constitutional violation.  See Jackson

13   v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by

14   Peralta, 744 F.3d at 1076; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004)

15   (negligence constituting medical malpractice is not sufficient to establish an Eighth

16   Amendment violation); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v.

17   State of Or., State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of

18   opinion between a prisoner-patient and prison medical authorities regarding treatment

19   does not give rise to a [section] 1983 claim.").  A plaintiff "must show that the course

20   of treatment the doctors chose was medically unacceptable under the circumstances,

21   and . . . that they chose this course in conscious disregard of an excessive risk to

22   plaintiff's health."  Jackson, 90 F.3d at 331.

23       **2.**    **Analysis**

24        Here, Plaintiff appears to allege that Defendants denied him medical care on at

25   least two occasions.  See Dkt. 11 at 3–4.  First, Plaintiff alleges that Tonani, a

26   correctional officer at NSP, would not let him receive breathing treatments for his

27   COPD.  Id. at 4.  Plaintiff claims that Defendants would have had access to his health

28   records, which documented his COPD.  Id. at 5.  Next, Plaintiff alleges that Bell, a

1   correctional officer at MCSP, denied him medical attention when he was experiencing

2   chest pain.  Id. at 4.

3       Although Plaintiff has partially described the type of care he was denied, he

4   does not describe whether or how his injuries worsened as a result.  Further, Plaintiff

5   has not shown that the lack of medical care exceeded mere negligence or a difference

6   of opinion in care.  In other words, Plaintiff has not alleged facts that could support

7   an inference that Defendants made a conscious choice to deny him care, despite the

8   risk to Plaintiff's health.

9       If possible, any amended complaint should include additional details about

10  Plaintiff's ailments at the time of the alleged violation, the specific conduct of the

11  medical personnel each facility, any resulting injuries, and should clearly restate

12  relevant information from the FAC.

13  **F.    PLAINTIFF FAILS TO STATE A CLAIM FOR EXCESSIVE FORCE**

14      **1.    Applicable law**

15      To the extent Plaintiff claims the Sheriff used excessive force after his arrest,

16  this claim is properly analyzed under the Due Process Clause of the Fourteenth

17  Amendment.  Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015); Mendiola-Martinez

18  v. Arpaio, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016).  To state a claim for excessive

19  force under the Fourteenth Amendment, a pretrial detainee must show that "the force

20  purposely or knowingly used against him was objectively unreasonable."  Kingsley,

21  576 U.S. at 389.

22      **2.    Analysis**

23      Here, Plaintiff alleges that after he was arrested, the Sheriff forcibly applied

24  handcuffs and forced Plaintiff to get on the ground.[6]  Dkt. 11 at 5.  Without more,

25  such allegations do not show that force was knowingly used and was objectively

26  unreasonable.  See Kingsley, 576 U.S. at 389; Dkt. 11 at 3.  Therefore, to the extent

27  _____

28  [6] It is not clear whether the Sheriff used physical force to bring Plaintiff to the ground or whether he
    instead ordered Plaintiff to do so.  See Dkt. 11 at 3, 5.

Plaintiff claims that the Sheriff used excessive force in violation of the Fourteenth Amendment, this claim fails.

## V.

## <u>LEAVE TO FILE A SECOND AMENDED COMPLAINT</u>

For the foregoing reasons, the FAC is subject to dismissal.  As the Court is unable to determine whether amendment would be futile, leave to amend is granted.  <u>See</u> <u>Lucas v. Dep't of Corr.</u>, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).

Accordingly, **IT IS ORDERED THAT by September 5, 2022,** Plaintiff must choose one of the following three (3) options:

1.       Plaintiff may file a Second Amended Complaint to attempt to cure the deficiencies discussed above.  If Plaintiff chooses to file a Second Amended Complaint, he must clearly designate on the face of the document that it is the "Second Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form.  Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the Complaint.  **In addition, the Second Amended Complaint must be complete without reference to the FAC, or any other pleading, attachment, or document.**

**<u>The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the Second Amended Complaint, which the Court encourages Plaintiff to use.  The Clerk of Court is also directed to mail Plaintiff a copy of his FAC (Dkt. 11) for his reference.</u>**

Plaintiff is advised that this Court's determination that the allegations in the FAC are insufficient to state a particular claim should not be seen as dispositive of that claim.  Accordingly, although this Court believes that Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is plausible on its face, Plaintiff is not required to omit any claim or defendant in order to pursue this action.  However, if Plaintiff decides to pursue a claim in a Second

Amended Complaint that this Court has found to be insufficient, then this Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately may submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

2.      Alternatively, Plaintiff may file a notice with the Court that he intends to stand on the allegations in his FAC. If Plaintiff chooses to stand on the FAC despite the deficiencies in the claims identified above, then the Court will submit a recommendation to the assigned district judge **that the FAC be dismissed with prejudice for failure to state a claim**, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

3.      Finally, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a). <u>**The Clerk of Court is directed to mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use if they choose to voluntarily dismiss the action.**</u>

**Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint will result in this action being dismissed with prejudice for failure to state a claim, or for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Dated:  August 09, 2022

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

16

FULL NAME: DAMON Lloyd WITHERBEE

COMMITTED NAME (if different)

FULL ADDRESS INCLUDING NAME OF INSTITUTION: MCIC-D-18-C 101-1L
P.O. Box 409089
Ione CA 95640

PRISON NUMBER (if applicable): BP5564

FIRST AMENDED complaint

**FILED**
CLERK, U.S. DISTRICT COURT

**7/14/22**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ eb _____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DAMON Lloyd Witherbee

PLAINTIFF,

v.

DAN Down
"District Attorney," etc.

DEFENDANT(S).

CASE NUMBER

CV22 - 2027 - MWF (MAR

*To be supplied by the Clerk*

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** *(Check one)*

☐ 42 U.S.C. § 1983
☑ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes ☑ No

2. If your answer to "1." is yes, how many? _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

**CIVIL RIGHTS COMPLAINT**

a. Parties to this previous lawsuit:
   Plaintiff _____

   _____

   Defendants _____

   _____

b. Court _____

   _____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it

   appealed? Is it still pending?) _____

f. Issues raised: _____

   _____

   _____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint
   occurred? ☑Yes  ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☑Yes  ☐ No

   If your answer is no, explain why not _____

   _____

   _____

3. Is the grievance procedure completed? ☐ Yes  ☑No

   If your answer is no, explain why not _transfered to other institions & COVID_

   _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff ___DAmon Lloyd WeTHERBEE___
(print plaintiff's name)

who presently resides at _Mule Creek State Prison D-18-C101-11 P.o. Box 409089 Ione CA 95640_
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

___San Luis County Sheriffs Dept___
(institution/city where violation occurred)

on (date or dates) _1/1/2020_ , _____ , _____ .
                (Claim I)           (Claim II)         (Claim III)

**NOTE**:    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant _DAN Dow_ resides or works at
(full name of first defendant)
_Courthouse Annex, 4th floor San Louis Obisbo CA 93408_
(full address of first defendant)
_District Attorney_
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual  ☐ official capacity.

Explain how this defendant was acting under color of law:
_By putting my life in jeopardy by not listing to my pleas about my health_

2. Defendant _San Locus Obispo County Sheriff_ resides or works at
(full name of first defendant)
_1585 KANSAS Ave, San Luis Obispo, CA 93405_
(full address of first defendant)
_Sheriffs Department_
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual  ☑ official capacity.

Explain how this defendant was acting under color of law:
_By forcebly clamping handcuffs tighter on my left hand when I said that I had a metal bar in it + when I said something he forced me down_

3. Defendant _Does 1-10_ resides or works at
(full name of first defendant)
_1585 KANSAS Ave, San Luis Obispo, CA 93405_
(full address of first defendant)
_Sheriffs at the county Jail_
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual  ☑ official capacity.

Explain how this defendant was acting under color of law:
_I have COPD, Ive had a heart attack + stroke, got metal in arm, hip and eye, they where well aware of my bad health and still put me in dangerous areas_

4. Defendant ___J. Torani___ resides or works at
(full name of first defendant)

___Norco State Prison___
(full address of first defendant)

___Correctional Officer___
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☒ official capacity.

Explain how this defendant was acting under color of law:

___By deny me to go to medical to have my___
___breathing treatments for my COPD___

5. Defendant ___Bell___ resides or works at
(full name of first defendant)

___Mule Creek State Prison___
(full address of first defendant)

___Correctional Officer___
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual ☒ official capacity.

Explain how this defendant was acting under color of law:

___By deny me medical attention when I was___
___having chest pain real bad, to me to leave medical___
___and then wrote me up for disobey an order___

## D. CLAIMS*

**CLAIM I**

The following civil right has been violated:

According to my Classification chrono it states I was sentenced to 6 years for PC 212.5 received 9/3/21 in the Correctional system, MCSP-II (EOP) with 16 points. I had no case by case Violent Exclusion I did not plead guilty to PC 2125. I was at a party and was awaken by a Defendent who worked for the FBI and held at gun point and told to get on the ground and then was hand cuffed by said Defendent + taken to sheriffs department, who then tried starting a fight with me by clamping the handcuffs tighter on my left arm where there is an obvious scar on my left arm. And I have obvious breathing problems + have had a heart attack + stroke

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

Because I have had tramatic brain injury and also have lack of oxygen because of my COPD + Epharima from doing construction work - sand hardwood floors doing electrical work working with Expersen piping + other thing that are documented in my VA records which these facilities have records of I believe my 8th amendment rights have been violated. I do not know the sheriffs names of hand but I am waiting for the reports Know.

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

loss of wages from my SSDI and pain and suffering from not have my heart checked out and being told by an officer of the law that I was just try to manipulate going to the law library when I went man down because I was having chest pains after getting a breathing treatment and two nitro nitre glycerins pills I was sent back to my unit where they was suppose to monitor me Because the Facility is on lock down because of COVID I cant check, or a quote specific things yet, attached to this is a few of the supporting documents I have.

Thank you Sincerly

---

**7/10/2022**
*(Date)*

**Damond T Matthews**
*(Signature of Plaintiff)*

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 5/10/2022    **Date IAC Received 1824:** 5/6/2022    **1824 Log Number:** 165185440547

**Inmate Name: WITHERBEE**    **CDCR #: BP5564**    **Housing:** D18-B1-103-1L

**RAP Staff Present:** T. Miranda, **ADA-AW;** M. Ullery, **P&S;** H. Cribari, **HCCA;** D. Coffin, **SP&S-MH;** H. Fletes, **CCII-IGO;** J. Andres, **DDP Sgt.;** A Wohlers, **SAI;** S. Strazdins, **HCGO**

**Summary of Inmate's 1824 Request:** You state you can't always fill out forms due to brain injury. You request shoes, breathing treatment and an ADA worker to scribe.

### Interim Accommodation:

☒ No interim accommodation required: Your issues are not found to cause personal injury or other serious harm while processing of this 1824.

☐ Interim accommodation provided:

☐ RAP rescinding interim accommodation:

### RAP is unable to process the following request(s):

☐ Paroled/discharged/transferred.                 ☐ Duplicate request. See CDCR 1824 log #:

☐ Refused to cooperate.                                 ☐ Other:

**Final Response:** The Reasonable Accommodation Panel (RAP) reviewed your request on 5/10/2022. The review encompassed your recent health care information, evaluations, and SOMS file. A Disability Placement Program Accommodation Summary has identified your Disability Codes as DPM and you are a participant in the Mental Health Services Delivery System at the EOP level of care. A recent Disability Verification Process (DVP) Worksheet notes your feet were examined by your PCP on 4/12/22 and you were referred to orthotics. In addition, the DVP notes breathing treatments are available for all inmates on an emergency basis. Ultimately, ADA Workers are available to assist you with completing forms.

The RAP has determined that no accommodation is required at this time for you to access programs, services, or activities.

**Direction If Dissatisfied:** If you disagree with the medical evaluations/final, you can file a CDCR 602 Healthcare Grievance (blue) form. Be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

If you disagree with the decision made by the RAP you may address your disagreement by attaching the CDCR 1824 package along with this RAP response to a newly completed CDCR 602 Inmate Grievance (green) form.

**Effective Communication:** You have been identified as requiring effective communication (EC), therefore special accommodations will be arranged with your correctional counselor to ensure effective communication and understanding of the decision.

_____T. Miranda_____          _____          __5/31/22_____
**ADA Coordinator/Designee**          **Signature**          **Date sent to inmate**

CCII Pierce

## ADA/Effective Communication Patient Summary

**As of:** 03/10/2022 07:59

### Patient Information

**NAME:** WITHERBEE, DAMON
**CDCR:** BP5564

### Disability Placement Program

**Current DPP Code(s):**
* DLT

**DPP Verification/Accommodation Date:** 12/29/21
12:57:43 PST

**Current Housing Restrictions/Accomodations:**
* Extra Time for Meals
* Bottom Bunk
* Ground Floor- Limited Stairs

### Methods of Communication

**SLI:**

**Primary Method:**

**Secondary Method:**

**Interview Date:**

### Developmental Disability Program

**Current DDP Code:**

**Effective Date:**

**Adaptive Support Needs:**

### Testing of Adult Basic Education (TABE)

**TABE Score:** No Score Available

**TABE Date:**

### Learning Disabilities

**Learning Disabilities:**

### English Proficiency

**LEP:** No

**Primary Language:** English

### Durable Medical Equipment

**Current ISSUED DME:**
* Compression Stocking Temporary
* Eyeglass Frames Permanent
* Mobility Impaired Disability Vest Permanent
* Wrist Support Brace Temporary

**Dental Prosthetic:**

**Dental Prosthetic Date:**

### MHSDS

**MHLOC:** EOP

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

22000478

| STAFF USE ONLY | Expedited? ☐ Yes ☒No | Tracking #: | |
|---|---|---|---|

**MCSP-HC**  #22000434#

M. Martinez, HCARN

3/10/22

Staff Name and Title (Print) — Signature — Date

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

Name (Last, First, Mi): WITHERBEE DAMON
CDCR #: BF5564
Unit/Cell #: B8/101L

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

My Eyeglasses corrected, My Nebulizer for my COPD, my dentures, my emergency contact updated, my gums updated, HAve supporting Documents with me, ADA was updated but wrong

Supporting Documents Attached. Refer to CCR 3999.227  ☐ Yes  ☒ No

Grievant Signature: _____  Date Submitted: 3/9/22

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL. DW

| SECTION B: | HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only | Is a CDCR 602 HC A attached? ☐ Yes ☒ No |
|---|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: _____ Date: _____

☐ Withdrawn (see section E)  (Dental)

☒ Accepted  Assigned To: Archibald  Title: TBD  Date Assigned: 3/15/22  Date Due: 5/3/22

Interview Conducted? ☒ Yes ☐ No  Date of Interview: 4/13/2022  Interview Location: D-Dental Clinic

Interviewer Name and Title (print): E. Nougel DDS  Signature: _____  Date: 4/13/2022

Reviewing Authority
Name and Title (print): Kristen Mann  Signature: K. Mann  Date: 5/11/2

Disposition: See attached letter  ☐ Intervention  ☒ No Intervention

HCGO Use Only: Date closed and mailed/delivered to grievant: MAY 13 2022

COMPLETED
RECEIVED MCSP
MCSP MAY 13 2022
MAR 10 2022  STAFF USE ONLY
HCGO

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | |
|---|---|---|---|
| ☒ TABE score ≤ 4.0 | ☒ Additional time | ☒ Patient asked questions | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ Patient summed information | |
| ☐ DPS ☐ DNH | ☐ Louder ☒ Slower | Please check one: | |
| ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not reached* ☒ Reached | |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes | |

4 Comments: pt. DPM, Ambul/w/wheelchair

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 2 of 2

MCSP-HC
Tracking #: # 2 2 0 0 0 4 3 4 #

| SECTION C: | Health Care Grievance Appeal. If you are dissatisfied with the Institutional Level Grievance Response, explain the reason below (if more space is needed, use Section C of the CDCR 602 HC A), and submit the entire health care grievance package by mail for Headquarters' (HQ) Level health care grievance appeal review. Mail to: Health Care Correspondence and Appeals Branch, P.O. Box 588500, Elk Grove, CA 95758. |
|---|---|

_____

Grievant Signature:                                        Date Submitted:

| SECTION D: | HEALTH CARE GRIEVANCE APPEAL REVIEW HQ LEVEL: Staff Use Only | Is a CDCR 602 HC A attached? ☐ Yes   ☐ No |
|---|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction):    Date: _____    Date: _____

☐ Withdrawn (see section E)    ☐ Accepted

☐ Amendment    Date: _____

Interview Conducted?    ☐ Yes  ☐ No    Date of Interview: _____    Interview Location: _____

Interviewer Name and Title (print): _____    Signature: _____    Date: _____

**Disposition:** See attached letter    ☐ Intervention    ☐ No Intervention

*This decision exhausts your administrative remedies.*

HQ Use Only: Date closed and mailed/delivered to grievant: _____

| SECTION E: | Grievant requests to WITHDRAW health care grievance: I request that this health care grievance be withdrawn from further review. Reason: |
|---|---|

_____

Grievant Signature:                                        Date Submitted:

Staff Name and Title (Print):

RECEIVED
MCSP          MCSP
MAR 1 0 2022   MAY 1 3 2022
HCGO          HCGO

**S T A F F   U S E   O N L Y**

Signature:                            Date:

Distribution: **Original** - Returned to grievant after completed; **Scanned Copy** - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*

## JUSTICE INVOLVED PATIENT'S RIGHTS & RESPONSIBILITIES

*A patient's rights and responsibilities shall include but not be limited to:*
*(a patient shall have the right to:)*

1. Exercise these rights without regard to sex or culture, economic, educational, or religious background or the source of payment for care.

2. Considerate and respectful care, including privacy in treatment and in care of personal needs, when not in conflict with security and custodial policies.

3. Receive information about the illness, the course of treatment and prospects for recovery in terms that the patient can understand and to be afforded the opportunity to discuss medical treatment.

4. Receive as much information about any proposed treatment or procedure as the patient may need in order to give informed consent or to refuse this course of treatment. Except in emergencies, this information shall include a description of the procedure or treatment, the medically significant risks involved in this treatment, alternate courses of treatment or nontreatment and the risks involved in each.

5. Participate in the consideration of ethical issues that arise in the provisions of the patient's care. A Bio-Ethics Committee exists for the purpose of addressing ethical issues which may arise the care of the patient. To gain access to the Bio-Ethics Committee, please notify the unit charge nurse or nursing administrator.

6. Confidential treatment of all communications and records pertaining to the care and the stay in the hospital. Written permission shall be obtained before medical records can be made available to anyone not directly concerned with the care or who is outside the correctional treatment center, except in case of transfer to another health care facility, or as or required by law.

7. Reasonable responses to any reasonable requests made for services.

8. To give informed consent or to refuse any treatment or procedure or participation in experimental research.

9. Be informed of continuing health care requirements following discharge from the hospital.

10. Know which hospital rules and policies apply to the patient's conduct while a patient.

*A patient's responsibilities shall include but are not limited to:*
*(A patient shall have the responsibility to/for:)*

1. Following the recommended treatment plan.

2. Her/his actions if the patient refuses treatment or fails to follow the practitioner's instructions.

3. Following hospital rules and regulations affecting patient care and conduct.

4. Considering the rights of other patients and hospital personnel. The patient is responsible for being respectful of the property of other persons and the hospital.

| | |
|---|---|
| _____ | _2/15/22_  _0920_ |
| Received by | Date / Time |

| | |
|---|---|
| _____ | _____ |
| Witness | Date / Time |



Affix Patient Label

**Tri-City Medical Center**
4002 Vista Way • Oceanside • CA • 92056



JUSTICE INVOLVED PATIENT'S
RIGHTS & RESPONSIBILITIES

```
WITHERBEE, DAMON
DOB: 09/19/1961
ATT: Cden, Cve
FIN: 7092303
```



Biddle
Trail lane
Paso Robles
93446
2203

P.O. Box
95240
409089

Donor Lloyd Witherbee

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

22000478

| STAFF USE ONLY | Expedited? | ☐ Yes | ☒ No | Tracking #: |
|---|---|---|---|---|

**MCSP-HC**  # 2 2 0 0 0 4 3 4 #

M. Martinez, HCARN

Staff Name and Title (Print) _____ Signature _____ Date 3/10/22

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): | CDCR #: | Unit/Cell #: |
|---|---|---|
| WITHERBEE DAMON | BP5564 | B8/101L |

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

My Eyeglasses corrected, My Nebulozers for my COPD,
my dentures, my emergency contact updated my sons
updated, Have Supporting Documents with me, ADA
has updated but wrong

Supporting Documents Attached. Refer to CCR 3999.227  ☐ Yes  ☒ No

Grievant Signature: _____   Date Submitted: 3/9/22

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.   DW

**SECTION B: HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only**   Is a CDCR 602 HC A attached? ☐ Yes  ☒ No

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: _____   Date: _____

☐ Withdrawn (see section E)   (Dental)

☒ Accepted   Assigned To: Archibald   Title: TBD   Date Assigned: 3/15/22   Date Due: 5/3/22

Interview Conducted? ☒ Yes ☐ No   Date of Interview: 4/13/2022   Interview Location: D-Dental Clinic

Interviewer Name and Title (print): E. Nouged DDS   Signature: _____   Date: 4/13/2022

Reviewing Authority Name and Title (print): Kristen Mann   Signature: _____   Date: 5/11/22

**Disposition:** See attached letter   ☐ Intervention   ☒ No Intervention

HCGO Use Only: Date closed and mailed/delivered to grievant: MAY 1 3 2022

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☒ TABE score ≤ 4.0 | ☒ Additional time | ☒ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☒ Slower | Please check one: |
| ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not reached* ☒ Reached |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes |

4. Comments: _____

RECEIVED
MCSP
MCSP MAR 1 3 2022
MAR 1 0 2022 **STAFF USE ONLY**
HCGO
COMPLETE

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
**MCSP-HG**
Page 2 of 2
Tracking #: **#22000434#**

22000478

| **SECTION C:** | Health Care Grievance Appeal. **If you are dissatisfied with the Institutional Level Grievance Response**, explain the reason below (if more space is needed, use Section C of the CDCR 602 HC A), and submit the entire health care grievance package by mail for Headquarters' (HQ) Level health care grievance appeal review. Mail to: Health Care Correspondence and Appeals Branch, P.O. Box 588500, Elk Grove, CA 95758. |

**Grievant Signature:**     **Date Submitted:**

**SECTION D:** **HEALTH CARE GRIEVANCE APPEAL REVIEW HQ LEVEL: Staff Use Only**    Is a CDCR 602 HC A attached? ☐ Yes    ☐ No

This grievance has been:

☐ Rejected (See attached letter for instruction):    Date:     Date:

☐ Withdrawn (see section E)   ☐ Accepted

☐ Amendment   Date:

Interview Conducted?    ☐ Yes ☐ No   Date of Interview:     Interview Location:

Interviewer Name and Title (print):     Signature:     Date:

**Disposition:** See attached letter   ☐ Intervention    ☐ No Intervention

*This decision exhausts your administrative remedies.*

**HQ Use Only:** Date closed and mailed/delivered to grievant:

**SECTION E:** Grievant requests to WITHDRAW health care grievance: I request that this health care grievance be withdrawn from further review. Reason:

**Grievant Signature:**     **Date Submitted:**

**Staff Name and Title (Print):**     Signature:     Date:

RECEIVED
COMPLETED
MCSP MCSP
MAR 1 0 2022 MAY 1 3 2022
HCGO HCGO

**STAFF USE ONLY**

Distribution: **Original** - Returned to grievant after completed; **Scanned Copy** - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*

STATE OF CALIFORNIA
GA-22 (9/92)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# INMATE REQUEST FOR INTERVIEW

| DATE 5/27/22 | TO Trust Account | FROM (LASTNAME) WITHERBEE | CDCR NUMBER BP5564 |
|---|---|---|---|

| HOUSING D18 | BED NUMBER C101 1L | WORK ASSIGNMENT NA | JOB NUMBER FROM NA TO |
|---|---|---|---|

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) NA | | ASSIGNMENT HOURS FROM       TO |
|---|---|---|

### Clearly state your reason for requesting this interview.
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

Certified trust Account - 6 months

**Do NOT write below this line. If more space is required, write on back.**

INTERVIEWED BY                                                      DATE

DISPOSITION

**INMATE:** Witherbee    **CDC#:** BP5564    **HOUSING:** D 18 101    **DATE:** 5/31/2022

**FROM:**    **MCSP TRUST OFFICE**

**REGARDING:**    REQUESTED SIX MONTH CERTIFIED TRUST STATEMENT

**CERTIFIED TRUST STATEMENTS ARE PROVIDED FOR COURT PURPOSES ONLY.**

☐   CERTIFIED TRUST ACCOUNT STATEMENTS ARE PROVIDED ONLY FOR COURT PURPOSES RELATED TO YOUR INCARCERATION. THEY WILL NOT BE PROVIDED FOR ANY OTHER REASON.

☒ X   CERTIFIED STATEMENTS ARE PROVIDED TO COUNSELORS. THEY ARE NOT MAILED WITHIN THE INSTITUTION.

☐   PLEASE DO NOT SEND YOUR LEGAL PAPERWORK TO THE TRUST OFFICE. WE ARE NOT RESPONSIBLE FOR YOUR LEGAL MAIL OUT. FOLLOW THE PROCEDURE FOR MAILING LEGAL PAPERWORK OUT OR CONTACT YOUR COUNSELOR FOR HELP.

☒ X   YOUR COUNSELOR, CCI: Navarro HAS BEEN NOTIFIED THAT YOUR STATEMENT IS AVAILABLE TO PICK UP FROM THE TRUST OFFICE. CONTACT THEM TO COMPLETE YOUR LEGAL PAPERWORK.

1  **C.    PLAINTIFF FAILS TO STATE A FAILURE TO PROTECT CLAIM**
2  **UNDER THE EIGHTH AMENDMENT[3]**

3      **1.    Applicable Law**

4          "The Eighth Amendment imposes a duty on prison officials to protect inmates

5  from violence at the hands of other inmates." Cortez v. Skol, 776 F.3d 1046, 1050

6  (9th Cir. 2015) (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  Prison officials

7  can violate the constitution if they are "deliberately indifferent" to a serious risk of

8  harm to the inmate.  See Farmer, 511 U.S. at 834; Estelle v. Gamble, 429 U.S. 97, 104

9  (1976); Cortez, 776 F.3d at 1050.  To be liable for "deliberate indifference," a prison

10  official must "both be aware of facts from which the inference could be drawn that a

11  substantial risk of serious harm exists, and he must also draw the inference." Farmer,

12  511 U.S. at 837.  "[A]n official's failure to alleviate a significant risk that he should

13  have perceived but did not, while no cause for commendation, cannot . . . be

14  condemned as the infliction of punishment." Id. at 838.  Allegations of negligence do

15  not suffice. Estelle, 429 U.S. at 105–06; Lopez, 203 F.3d at 1131.

16      **2.    Analysis**

17          Here, it is unclear whether Plaintiff is attempting to make an Eighth

18  Amendment claim for failure to protect.  Plaintiff alleges that he is a disabled veteran

19  who is blind, has a traumatic brain injury, and post-traumatic stress disorder. Dkt. 3

20  at 5.  Plaintiff also alleges that he was attacked, but it is not clear whether this attack

21  occurred while he was in custody at the San Luis Obispo County Jail and whether this

22  attack caused his described medical impairments, such as his traumatic brain injury.

23  Id.  Further, the Complaint is entirely devoid of any allegations as to the individual

24  Defendants' actions.  In the absence of clear factual allegations showing that

25  ───────────────

[3] To the extent Plaintiff asserts that the alleged failure to protect violated Plaintiff's due process
26  rights, any such claim is not cognizable. See United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)
("if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth
27  Amendment, the claim must be analyzed under the standard appropriate to that specific provision,
not under the rubric of substantive due process") (citing Graham v. Connor, 490 U.S. 386, 394
28  (1989)).

12

California Rehabilitation Center
Library

## *15 CCR 3123*

This document is current through Register 2022, No. 1, January 7, 2022

*CA - Barclays Official California Code of Regulations > TITLE 15. CRIME PREVENTION AND CORRECTIONS > DIVISION 3. ADULT INSTITUTIONS, PROGRAMS AND PAROLE > CHAPTER 1. RULES AND REGULATIONS OF ADULT OPERATIONS AND PROGRAMS > SUBCHAPTER 2. INMATE RESOURCES > ARTICLE 3. LIBRARY*

## § 3123. Access to Law Libraries

(a) Physical law library access means physical entry into a facility law library for the purpose of using its legal resources. A facility law library includes, but is not limited to, a print law library or the Law Library Electronic Delivery System (LLEDS) with any necessary print supplements.

(b) All inmates, regardless of their classification or housing status, shall be entitled to physical law library access that is sufficient to provide meaningful access to the courts. Inmates on PLU status may receive a minimum of 4 hours per calendar week of requested physical law library access, as resources are available, and shall be given higher priority to the law library resources. Inmates on GLU status may receive a minimum of 2 hours per calendar week of requested physical law library access, as resources are available.

(c) When unable to physically access the law library, an inmate may request access to legal material through delivery of those materials to the inmate by library staff. This process is referred to as law library paging. An inmate shall not be limited to law library paging for access to legal materials except under extraordinary circumstances including, but not limited to, the following:

(1) The inmate is directly under a prison lockdown or modified program.

(2) The inmate is under restricted movement due to his or her medical status.

(3) The inmate has been suspended from physical access to the law library pending investigation of a serious rule violation.

(d) Inmates who are limited to law library paging due to a lockdown or modified program shall, whenever possible, have their law library access restored within 16 calendar days unless a high security risk continues to exist to prohibit physical law library access.

(e) When inmates are limited to law library paging for any reason as described in section 3123(c), law library staff must deliver the requested legal material to their cells as soon as possible, but no later than 16 calendar days from the date of the paging request.

(f) Disciplinary action for an inmate who is found to be guilty of a serious rule violation pertaining to law library resources, facilities, or staff may include a suspension of all physical law library access for up to 90 calendar days. This action does not preclude an inmate from pursuing legal research through the reasonable use of law library paging, beginning three calendar days after the date of suspension until the suspension period ends.

**Statutory Authority**

15 CCR 3123

## AUTHORITY:

Note: Authority cited: *Section 5058, Penal Code*. Reference: *Section 5054, Penal Code*; *Gilmore v. Lynch, 319 F.Supp. 105 (N.D. Cal. 1970)*; *Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir. 1986)*; Toussaint v. McCarthy, USDC N.D. Cal. No. C 73-1422 SAW, First Special Report of the Monitor, August 19, 1987; Toussaint v. Rowland, USDC N.D. Cal. No. C 73-1422 SAW, Second Special Report of the Monitor, June 30, 1988; *Zatko v. Rowland, 835 F.Supp. 1174 (N.D. Cal. 1993)*; *Lewis v. Casey, 518 U.S. 343 (1996)*.

## History

### HISTORY:

1. New section filed 11-24-2009; operative 12-24-2009 (Register 2009, No. 48).

2. Amendment of subsections (c)(1) and (d) filed 6-14-2011; operative 7-14-2011 (Register 2011, No. 24).

BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS
Copyright © 2022 by Barclays Law Publishers All rights reserved

End of Document

ConnieGipson

california & us constitution
5 . Art I sect I   Denied right of privacy

Patient Education Materials Follows:

# Metered Dose Inhaler With Spacer

Inhaled medicines are the basis of treatment of asthma and other breathing problems. Inhaled medicine can only be effective if used properly. Good technique assures that the medicine reaches the lungs. Your health care provider has asked you to use a spacer with your inhaler to help you take the medicine more effectively. A spacer is a plastic tube with a mouthpiece on one end and an opening that connects to the inhaler on the other end.

Metered dose inhalers (MDIs) are used to deliver a variety of inhaled medicines. These include quick relief or rescue medicines (such as bronchodilators) and controller medicines (such as corticosteroids). The medicine is delivered by pushing down on a metal canister to release a set amount of spray.

If you are using different kinds of inhalers, use your quick relief medicine to open the airways 10–15 minutes before using a steroid if instructed to do so by your health care provider. If you are unsure which inhalers to use and the order of using them, ask your health care provider, nurse, or respiratory therapist.



## HOW TO USE THE INHALER WITH A SPACER

1. Remove cap from inhaler.
2. If you are using the inhaler for the first time, you will need to prime it. Shake the inhaler for 5 seconds and release four puffs into the air, away from your face. Ask your health care provider or pharmacist if you have questions about priming your inhaler.
3. Shake inhaler for 5 seconds before each breath in (*inhalation*).
4. Place the open end of the spacer onto the mouthpiece of the inhaler.
5. Position the inhaler so that the top of the canister faces up and the spacer mouthpiece faces you.
6. Put your index finger on the top of the medicine canister. Your thumb supports the bottom of the inhaler and the spacer.
7. Breathe out (*exhale*) normally and as completely as possible.

8. Immediately after exhaling, place the spacer between your teeth and into your mouth. Close your mouth tightly around the spacer.
9. Press the canister down with the index finger to release the medicine.
10. At the same time as the canister is pressed, inhale deeply and slowly until the lungs are completely filled. This should take 4–6 seconds. Keep your tongue down and out of the way.
11. Hold the medicine in your lungs for 5–10 seconds (10 seconds is best). This helps the medicine get into the small airways of your lungs. Exhale.
12. Repeat inhaling deeply through the spacer mouthpiece. Again hold that breath for up to 10 seconds (10 seconds is best). Exhale slowly. If it is difficult to take this second deep breath through the spacer, breathe normally several times through the spacer. Remove the spacer from your mouth.
13. Wait at least 15–30 seconds between puffs. Continue with the above steps until you have taken the number of puffs your health care provider has ordered. **Do not** use the inhaler more than your health care provider directs you to.
14. Remove spacer from the inhaler and place cap on inhaler.
15. Follow the directions from your health care provider or the inhaler insert for cleaning the inhaler and spacer.

If you are using a steroid inhaler, rinse your mouth with water after your last puff, gargle, and spit out the water. **Do not** swallow the water.

**AVOID:**

- Inhaling before or after starting the spray of medicine. It takes practice to coordinate your breathing with triggering the spray.
- Inhaling through the nose (rather than the mouth) when triggering the spray.

## HOW TO DETERMINE IF YOUR INHALER IS FULL OR NEARLY EMPTY

You cannot know when an inhaler is empty by shaking it. A few inhalers are now being made with dose counters. Ask your health care provider for a prescription that has a dose counter if you feel you need that extra help. If your inhaler does not have a counter, ask your health care provider to help you determine the date you need to refill your inhaler. Write the refill date on a calendar or your inhaler canister. Refill your inhaler 7–10 days before it runs out. Be sure to keep an adequate supply of medicine. This includes making sure it is not expired, and you have a spare inhaler.

## SEEK MEDICAL CARE IF:

- Symptoms are only partially relieved with your inhaler.
- You are having trouble using your inhaler.
- You experience some increase in phlegm.

## SEEK IMMEDIATE MEDICAL CARE IF:

- You feel little or no relief with your inhalers. You are still wheezing and are feeling shortness of breath or tightness in your chest or both.
- You have dizziness, headaches, or fast heart rate.
- You have chills, fever, or night sweats.
- There is a noticeable increase in phlegm production, or there is blood in the phlegm.

This information is not intended to replace advice given to you by your health care provider. Make sure you discuss any questions you have with your health care provider.

Document Released: 12/18/2006 Document Revised: 05/03/2016 Document Review ed: 06/05/2014

STATE OF CALIFORNIA · DEPARTMENT OF CORRECTIONS AND REHABILITATION

**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

MCSP

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| | 164 6669 39412 | MAR 0 7 2022 |

***********TALK TO STAFF IF YOU HAVE AN EMERGENCY***********

**DO NOT** use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC.

OOG

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | HOUSING |
|---|---|---|---|
| Daman Witherbee | BP5564 | | B8- 101L |

INSTRUCTIONS:
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**
Im completely blind in my right eye and it get hard
to read/spread. been diagnosed with bodily be polar
so I need help with the law library plus I
get lost or sidetracked easily

**WHY CAN'T YOU DO IT?**
Blind right eye, bipolar, Disabled vet so if I get in
a crowd I get nervous

**WHAT DO YOU NEED?** Help going to the library to do legal work carrying books
a lot.

_(Use the back of this form if more space is needed)_

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**   Yes ☑   No ☐   Not Sure ☐

List and attach documents, if available:
documented in my D6(99) or K5800 plus my niece
w/ full ryes.

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

| Homan Witherbee | 3/5/22 |
|---|---|
| **INMATE'S SIGNATURE** | **DATE SIGNED** |

Assistance in completing this form was provided by:

| Last Name | First Name | Signature |
|---|---|---|
| | | |



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



Institutional Level Assignment N



**Date:** MAR 1 5 2022

**To:** WITHERBEE, DAMON (BP5564)
# B 008 1101001LP
Mule Creek State Prison
P.O. Box 409099
Ione, CA 95640

**Tracking #:** MCSP HC 22000434

**Due Date:** 5/13/2022

The Health Care Grievance Office has accepted your health care grievance for response. If you need additional information regarding your health care grievance, contact the health care grievance coordinator at your institution.

California Code of Regulations, Title 15, Section 3999.226(c), states "The grievant has the right to submit one health care grievance every 14 calendar days, unless it is accepted as an expedited grievance. The 14 calendar day period shall commence on the calendar day following the grievant's last accepted health care grievance." Health care grievances submitted in excess of these limitations may be subject to rejection per California Code of Regulations, Title 15, Section 3999.234(a)(1).

If you have additional health care needs, you are advised to utilize approved processes to access health care services in accordance with California Correctional Health Care Services policy.

ותובי״ם

Health Care Grievance Office Representative
Mule Creek State Prison

חזקה

|  |  | Initials |
|---|---|---|
| 12 | ASSIGNMENT OF BENEFITS: The patient or agent, hereby authorizes direct payment to the hospital/provider, any insurance benefits, including but not limited to third party liability payable to or on the patient's behalf for this hospitalization or for these services, including emergency services if rendered, at a rate not to exceed the hospital's billed charges. It is agreed that payment to the hospital by an insurance company shall discharge the insurance company of all obligations under a policy to the extent of such payment. | |
| | The patient understands that he/she is financially responsible for charges not covered by this assignment. This assignment is irrevocable. | *DW* |
| 13. | PHYSICIANS ARE INDEPENDENT CONTRACTORS: All physicians and surgeons furnishing services to the patient, including the radiologist, pathologist, anesthesiologist, the emergency department physician and the like, are independent contractors and are not employees or agents of the hospital. Some of these physicians will bill separately for their services and may not have agreements with same insurance plans as the hospital. The undersigned acknowledges receipt of the Patient Notification Form and may request an additional copy at this time. | |
| | The patient is under the care of and supervision of his/her attending physician and it is the responsibility of the hospital and its nursing staff to carry out the instructions of such physician. It is the responsibility of the patient's physician or surgeon to obtain the patient's informed consent, when required, to medical or surgical treatment, special diagnostic or therapeutic procedures, or hospital services rendered to the patient under the general and special instructions of the physician. | *DW* |
| 14. | HEALTH PLAN OBLIGATION: This hospital maintains a list of health plans with which it contracts. A list of such plans is available upon request from Patient Financial Services. The hospital has no contract, express or implied with any plan that does not appear on the list. The undersigned agrees that he/she is individually obligated to pay the full charges of all covered services rendered to him/her by the hospital if he/she belongs to a plan, which does not appear on the above-mentioned list. | *DW* |
| 15. | VISITORS: You have the right to visitors of your choice, including spouse, domestic partner (including same sex domestic partners), another family member or a friend. | *DW* |

The undersigned certifies that he/she has read the foregoing, received a copy, and is the patient, the patient's legal representative, or is duly authorized by the patient as the patient's general agent to execute the above and accept its terms.

Name: Patient/Legal Representative _Dana Witherbee_    Signature: Patient Legal Representative _Dana Witherbee_    Date (m/d/yy) _2/15/22_    Time _09:25_ AM/PM

If signed by other than patient, indicate relationship:

☐ Parent ☐ Spouse ☐ Partner ☐ Relative ☐ Durable Power of Attorney ☐ Conservator ☐ Tutor/Legal Guardian
_____ Healthcare

If patient is unable to sign, state reason: _____

☐ Interpretation provided: Language: _____

☐ Telephonic ☐ VRI _____
Interpreter: **Name or ID No.**

☐ Face-to-face interpreter Signature: _____

---

**Witness/Representative of Tri-City Medical Center (print name)** _____    Signature _____

**Financial Responsibility Agreement by Person Other Than the Patient or Patient's Legal Representative.**

I agree to accept financial responsibility for services rendered to the patient and to accept the terms of the Financial Agreement, Assignment of Insurance Benefits and Health Plan Obligation provisions above.

Signature: _____    _____
*(Financially responsible party)*    *(print name)*

Date/Time: _____

Witness: _____    _____
*(TCMC representative)*    *(print name)*

Date/Time: _____

**Tri-City Medical Center**

4002 Vista Way • Oceanside • CA • 92056

**CONDITIONS OF ADMISSION**

8560-4011
Rev. 03/20



Affix Patient Label

WITHERBEE, DAMON
DOB: 09/19/1961
ATT: Cder, Crc
FIN: 7096303

Patient education materials

---

1. **NO CAFFEINE:** no coffee (decaf or reg), sodas, chocolate products or any kind of tea, any aspirin that contains caffeine (Excedrin)

---

2. **_Nothing to eat or drink after midnight_** **on 6/2/22**

**_May take Rx'd BP meds with sips of water on the day of the test._**

---

3. No theophylline 48 hours prior to appointment.

---

# Pharmacologic Stress Electrocardiogram

A pharmacologic stress electrocardiogram is a heart (*cardiac*) test that uses nuclear imaging to evaluate the blood supply to your heart. This test may also be called a pharmacologic stress electrocardiography. Pharmacologic means that a medicine is used to increase your heart rate and blood pressure.

This stress test is done to find areas of poor blood flow to the heart by determining the extent of coronary artery disease (CAD). Some people exercise on a treadmill, which naturally increases the blood flow to the heart. For those people unable to exercise on a treadmill, a medicine is used. This medicine stimulates your heart and will cause your heart to beat harder and more quickly, as if you were exercising.

Pharmacologic stress tests can help determine:

- The adequacy of blood flow to your heart during increased levels of activity in order to clear you for discharge home.
- The extent of coronary artery blockage caused by CAD.
- Your prognosis if you have suffered a heart attack.
- The effectiveness of cardiac procedures done, such as an angioplasty, which can increase the circulation in your coronary arteries.
- Causes of chest pain or pressure.

## LET YOUR HEALTH CARE PROVIDER KNOW ABOUT:

- Any allergies you have.
- All medicines you are taking, including vitamins, herbs, eye drops, creams, and over-the-counter medicines.

DAMON LLOYD WITHERBEE
BP55604
MCIC - D - 18 - C101 - 1L
P.O. Box 409089
Ione CA 95640

COURT OR ATTORNEY GENERAL'S
OFFICE USE ONLY

UNITED STATES DISTRICT COURT
Central DISTRICT OF CALIFORNIA
OFFICE OF THE CLERK
255 EAST TEMPLE STREET, ROOM 180
Los Angeles, CAlifornia 90012

MAP

Witherbee, D
INDIGENT USE ONLY
NAME & CDCR# BP55604

COURT OR ATTORNEY GENERAL'S
OFFICE USE ONLY

Witherbee, D
INDIGENT USE ONLY
NAME & CDCR# BP55604

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  | CASE NUMBER |
|---|---|
| Plaintiff(s), | |
| v. | |
| Defendant(s). | **NOTICE OF DISMISSAL PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 41(a) or (c)** |

PLEASE TAKE NOTICE: (*Check one*)

☐   This action is dismissed by the Plaintiff(s) in its entirety.

☐   The Counterclaim brought by Claimant(s) _____ is dismissed by Claimant(s) in its entirety.

☐   The Cross-Claim brought by Claimants(s) _____ is dismissed by the Claimant(s) in its entirety.

☐   The Third-party Claim brought by Claimant(s) _____ is dismissed by the Claimant(s) in its entirety.

☐   **ONLY** Defendant(s) _____

_____ is/are dismissed from (*check one*) ☐ Complaint, ☐ Counterclaim, ☐ Cross-claim, ☐ Third-Party Claim brought by _____.

The dismissal is made pursuant to F.R.Civ.P. 41(a) or (c).


_____          _____
            *Date*                                  *Signature of Attorney/Party*


*NOTE:*  *F.R.Civ.P. 41(a): This notice may be filed at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.*

*F.R.Civ.P. 41(c): Counterclaims, cross-claims & third-party claims may be dismissed before service of a responsive pleading or prior to the beginning of trial.*

_____
FULL NAME

_____
COMMITTED NAME (if different)

_____
FULL ADDRESS INCLUDING NAME OF INSTITUTION

_____

_____
PRISON NUMBER (if applicable)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAINTIFF,<br><br>v.<br><br><br>DEFENDANT(S). | CASE NUMBER<br><br>_____<br>*To be supplied by the Clerk*<br><br>**CIVIL RIGHTS COMPLAINT**<br>**PURSUANT TO** *(Check one)*<br>☐ 42 U.S.C. § 1983<br>☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A.  PREVIOUS LAWSUITS

1.  Have you brought any other lawsuits in a federal court while a prisoner:  ☐ Yes    ☐ No

2.  If your answer to "1." is yes, how many? _____

    Describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a.  Parties to this previous lawsuit:
    Plaintiff _____

    _____

    Defendants _____

    _____

b.  Court _____

    _____

c.  Docket or case number _____

d.  Name of judge to whom case was assigned _____

e.  Disposition (For example:  Was the case dismissed?  If so, what was the basis for dismissal?  Was it

    appealed?  Is it still pending?) _____

f.  Issues raised: _____

    _____

    _____

g.  Approximate date of filing lawsuit: _____

h.  Approximate date of disposition _____


**B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES**

1.  Is there a grievance procedure available at the institution where the events relating to your current complaint
    occurred?  ☐ Yes    ☐ No

2.  Have you filed a grievance concerning the facts relating to your current complaint?  ☐ Yes    ☐ No

    If your answer is no, explain why not _____

    _____

    _____

3.  Is the grievance procedure completed?  ☐ Yes    ☐ No

    If your answer is no, explain why not _____

    _____

4.  Please attach copies of papers related to the grievance procedure.

**C.  JURISDICTION**

This complaint alleges that the civil rights of plaintiff _____
(print plaintiff's name)

who presently resides at _____ ,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

_____
(institution/city where violation occurred)

on (date or dates) _____, _____, _____.
(Claim I)                    (Claim II)                   (Claim III)

**NOTE**:     You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.  Defendant _____ resides or works at
(full name of first defendant)

_____
(full address of first defendant)

_____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

2.  Defendant _____ resides or works at
(full name of first defendant)

_____
(full address of first defendant)

_____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

3.  Defendant _____ resides or works at
(full name of first defendant)

_____
(full address of first defendant)

_____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

4.   Defendant _____ resides or works at
                (full name of first defendant)

     _____
     (full address of first defendant)

     _____
     (defendant's position and title, if any)

     The defendant is sued in his/her (Check one or both): ☐ individual   ☐ official capacity.

     Explain how this defendant was acting under color of law:

     _____

     _____

5.   Defendant _____ resides or works at
                (full name of first defendant)

     _____
     (full address of first defendant)

     _____
     (defendant's position and title, if any)

     The defendant is sued in his/her (Check one or both): ☐ individual   ☐ official capacity.

     Explain how this defendant was acting under color of law:

     _____

     _____

**D.  CLAIMS***

**CLAIM I**

The following civil right has been violated:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without

citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each

DEFENDANT (by name) did to violate your right.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same
outline.*

**E.  REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____        _____
       *(Date)*                               *(Signature of Plaintiff)*